I'm glad we've got this first case this morning is case 4 1 4 0 2 7 5 in re Shru R for the appellate. We have John O'Brien for the after the captain Shepard. Mr. O'Brien make the seat. I'm glad we have this first case this morning is case 4 2 0 2 7 5 in re Shru R for the appellate. We have John O'Brien for the after the captain Shepard. Mr. O'Brien make the seat. We have John O'Brien for the after the captain Shepard. Mr. O'Brien make the seat. The trial court erred in its finding because there was no adoption in the offing. The termination provided no permanence or continuity or closure for the minors moving forward, and the termination did not align with the wishes of the foster parents. Because of this, termination of appellant's rights was unnecessary and against the minors best interest. Counsel, can you provide us a case that says that you cannot terminate if you don't have an adoption prospect? No, Your Honor. There's no case law where the lack of an adoptive parent required a per se finding that the termination wasn't in the minors best interest. However, many of the cases have held that it's a factor for the court to consider in its determination. The unique facts of this case lend itself to a situation where the court can consider that the lack of an adoptive parent along with the really severance of ties between the minors and the mother as a case where that factor could weigh heavily in the court's determination. You're right that there are unique facts. I mean, isn't the lack of an adoption prospect really based on the position of the foster parents and their position that they believe they can maximize opportunities for the children by not adopting and be able to, more likely be able to ensure that they're able to get their college education and pursue things of that nature? It is, Your Honor, and there are a number of reasons that the foster parents don't believe that adoption is in the best interest of minors. One of those is the possibility for future college financial aid. There are additional reasons that the foster mother, Ms. Gross, conveyed to the court and through her report submitted. One of those was that she didn't feel it was appropriate with the mother still being living and the minors having other biological family in the country. And while we are not here to contend that their foster placement is inappropriate or anything of that nature, the minors have done an exceptional job acclimating to their foster placement and they've really thrived under that placement. The appellant's contention here is that the termination of her rights did nothing to change their foster situation. It did nothing to allow the foster parents to adopt the minors moving forward. It was really an unnecessary and somewhat punitive action by the court to terminate her rights. Why punitive? Because really, there's really two underlying reasons why the court should terminate parental rights. One is to free the adoption, free the child for adoption with the foster parents or an adoptive parent waiting. And the other is, you know, cases have found that severing ties to the biological mother or father is in the child's best interest moving forward. Why is that not the case here? As mentioned earlier, the facts here are very unique. The mother, you know, we can see the mother was convicted of permitting sexual abuse of a minor. She served her time. She was released from prison. She relocated to India and it's our belief that mother is unable to return to the country due to her immigration status at this time. So how would keeping any connection to the mother whose behavior was bad enough to result in the finding that occurred with these children who are rather older than most children going through this process, how is that in their best interest? Well, the minors in this case, as you mentioned, are now 14 and I believe 18 or 14, 16 years old. And their sessions with their therapist and the testimony they provided indicate that once the mother had relocated back to India and leading up to her relocation and her termination, she was not allowed any contact with the minors outside of a single letter. The minors expressed themselves and their therapist expressed that they have already really had closure in the situation. They've had no contact with the mother. This termination proceeding to them does not provide any more closure than they already had. Your client wants some involvement in their lives, does she not? Well, that's unknown at this time. Well, that's the reason you're here objecting to termination. So that option is at least available? Yes. How is her involvement in their lives in their best interest? Well, the minors have had, obviously, a very trying two years. Their father passed away. They moved in with a family friend who sexually abused them. Their mother was convicted of permitting sexual abuse and the rights have been terminated. The minors at this time, at least the younger minor, Shreya, has expressed the possibility of visiting with her mother in the future should her mother comply with the objectives laid out by DCFS and the court. The difference, though, under these circumstances is parental rights aren't terminated. It's at the mother's option to initiate and try to maintain contact, is it not? I believe so. And if parental rights are terminated, she has no option to do anything. That's correct. But the children who are 16 and 14 at this age or later on in their lives, I believe one of them is going to be an adult in a few years, if they are so inclined to contact their parent, their mother, they could do so, could they not? Yes. So the question is, why is it in their best interest to not eliminate the mother from their lives so that any further contact comes at the children's option, not the mother's? Well, the minors, as I mentioned previously, their father is deceased and this action taken basically eliminates the only living parent they have in their life. Doesn't it also protect them from the only parent they had who failed them miserably? It does. And as I mentioned in my opening, the appellant does not contest her finding that she was unfit. So even if the court does reverse the judgment based upon it not being in the best interest of minors, she's still adjudicated as an unfit parent. And as I mentioned earlier, she is in India at this time, it's our belief, and would need to go through numerous channels to be able to put herself back in the lives of the minors. The facts of this case show that termination of appellant's rights has done nothing but strip the minors of their only living legal parent and leaves them with the same uncertainties of foster care moving forward. When making a determination of best interest of minors, the trial court should look at the factors contained in 4.05 of the Juvenile Court Act. Of these factors, the trial court weighed heavily the minors' need for permanence and continuity moving forward. As previously mentioned, the consideration of those factors is the presence or availability of adoptive parent. The cases cited in the appellant's brief find that although a lack of adoptive parent does not require, per se, finding terminations against a minor's interest, availability of an adoptive parent is one factor for them to consider. In many of those cases, the courts focused on the detrimental conduct of the mother and the need to sever the minor's relationships. Here, as I mentioned, unique circumstances do not require the court to take an active step to sever any ties with the appellant. The minors are not further harmed by any destructive behavior of the appellant and there is no contact from the mother to free the children from. The trial court also made the determination that the termination of the parental rights would give the minors closure moving forward. However, this termination does not provide any further closure or certainty for the minors moving forward. As previously stated, the appellant is relocated back to India. The therapist for the youngest daughter, Shreya, has testified that the appellant's relocation and lack of contact has essentially severed the ties for the minor and the appellant. The foster mother, Ms. Grose, who spends more time than any with the minors, also testified that she perceived a lot less stress in the girls once the mother had relocated back to India. Additionally, it was noted in the trial court's ruling that the minors did not have to concern themselves with possible deportation proceedings. The minors had expressed to their therapist and throughout the process that they wanted to remain in the United States and not move back to India. The trial court noted that there was special immigration status available that would allow them to remain in the United States regardless of any outcome of the termination proceedings. The final factor to be concerned by the trial court is the preferences of the persons caring for the minors. As we stated, the foster parents of the minors, the Groses, have been involved in their lives since March 8, 2013. All the documentation, the record, and testimony from the minors indicate that they have acclimated very well to their foster placement and are thriving. Both girls are receiving very good grades and have been inspired to go to college. The Groses did express a desire not to adopt the girls as it was not the best outcome for them. The Groses stated that their preferences would be to maintain foster to independence care, stating that the adoption of the minors was not appropriate at this time. Because of this, with no adoption and offing, the appellant's rights terminated. The result of the proceedings left the minors with no legal parent and no change in their current foster placement. As this court is aware, parental rights are fundamental and not to be taken lightly in a termination proceeding. Because of this, termination of parental rights is a severe and harsh remedy that should only be undertaken with a clearly defined goal or objective in place. In this case, the appellant's rights were terminated without an adoptive parent waiting and without any prospective change in legal status for the minors. This proceeding has produced no benefit to the minors and no benefit to the foster family. The termination case is a punitive act that severs the last remaining tie the minors have to their only living biological parent. We therefore ask this court to reverse the trial court's finding that the termination of the appellant's parental rights was in the best interest of the minors. Thank you, and I would be happy to entertain any more questions the court may have. Thank you, Mr. O'Brien. You'll have rebuttal. Ms. Shepherd? May I please report, counsel? The record overwhelmingly supports the trial court's best interest finding. As counsel admits, there's no issue as to whether or not Respondent is unfit. She clearly is. And the standard is not whether or not there's a legal parent still living or whether or not termination is necessary. The standard, of course, is whether termination is in the minor's best interest. Respondent effectively argues that termination is not warranted because it would not more decisively sever her relationship with the minors, where, as she concedes she's unfit, she's got no relationship with the minors, she's left the country, and she's demonstrated no ability or inclination to parent the minors or to provide a home for them. So these are extreme circumstances demonstrating that it is in the best interest of the minors to terminate her parental rights. She's not in any position, there's no indication that in the near or even the distant future that she would parent them. There's also the factor of the minors being in a very loving foster home. It could hardly be better for them. As opposing counsel states, they've been thriving there. And it's a misnomer. The record does not show that the foster parents do not think that it's in the best interest of the minors or don't want to adopt them. As you were mentioning, Justice Holder-White, the Respondent parents were looking at what was in the best interest of the minors for their college education. And they said, we don't care. Our main concern is providing a permanent family for them. Secondarily to that, we would like to have whatever arrangement is best for them, including adoption. Adoption was one of the options, but they had gone to the trouble of investigating what would be best for the minors and their opportunity to get college funds. And so they were willing to do whatever it took for them to be permanent members of their family. Let's see. This is a truly overwhelming case. And the standard, of course, is whether or not the trial court's best interest finding is against the manifest way of the evidence. In order for that standard to be met, the facts have to clearly demonstrate the court should have reached the opposite result and the evidence does not remotely meet that standard. Justice White raised the question of is it appropriate or is there a case law out there dealing with the subject of a termination of parental rights finding it's in the best interest of the minor that parental rights were terminated in the absence of a specific adoptive home? Or even, as in this case, where one seems problematic that adoption will occur? Yes, Your Honor, there is case law out there that addresses this question. It comes down in favor of termination. Which case is that? Well, Tashika F. was one of the cases that we cited in our brief, basically saying, well, in that case, the prospects of, as I recall, prospects of adoption were slim. The prospects that respondent would ever be in a position to parent the minors was also slim. So that's only one factor. And here it's not even a factor in our case because, of course, the foster parents have said they are willing to adopt the minors. And, again, the respondent has not been present. She's in India. There's no evidence, by the way, I think the opposing counsel made reference to her immigration status. There's nothing in the record about her immigration status preventing her from coming back. She went to a hearing. Well, let me be more clear. It seems to me that while the adoptive status, as you put it, hasn't been ruled out, that seems to be not likely for the reasons that have been explored in this case. Because let's assume hypothetically that all other aspects of this case were true, were factually the same, except the adoptive parents said, no, we don't see adoption ever. And there was no one else on the horizon dealing with 16 and 14-year-olds. Would that trump the trial court's determination that termination of best interests parental rights was appropriate? No, Your Honor, and the case law would be against that. Well, the one you have just says, well, that's not ruled out. Let's assume we can rule it out. Would it then be inappropriate to find termination of parental rights to be appropriate? Counsel, let me ask you about the DEM case. Isn't that a case where the foster parents said, absolutely, I'm not willing to adopt, I want to do guardianship, and the termination still went forward and that was upheld? I don't know. I can't recall if that was cited in your brief or not. I'm not trying to… It was. Okay. I have a copy of it and I printed it out, but I don't know if I found that on my own or something was cited. Well, and as you're mentioning, Your Honor, it's not determinative whether or not there's an adoptive placement available. We would argue, I guess, that the fact that the children are older in this case, that it won't be long before they will be able to be on their own. So your position is it's merely a factor to be considered by the court in the ultimate best interests determination? Yes, and I believe, let me see, it's under the statute as well. There are a number of factors to be considered under the statute and that's only one of the factors. And here I have to emphasize again that it's not this case. I mean, the foster parents have made it clear that they want these children to be a part of their family by whatever means is available, including adoption. So this is an important issue, perhaps, but it does not apply to our case. And it's only one factor. And here, the respondent is in India. She has made no effort to provide a home for these children, to parent them in any way. And the children have been clear that they do not want contact with her. The older minor has been clear about that from the very beginning. And the younger minor says she probably didn't want to live with the respondent probably ever in my life. And she only might be okay with visits if the respondent still was in the U.S. and doing services. And there's no chance that that's going to happen. There's no indication that that's going to happen. So the evidence is overwhelming and the state would ask the court to report. Okay, thank you. Any rebuttal? I agree. Okay, thank you. Appellant agrees that the presence of an adoptive parent is the one factor for the court to consider. However, it falls under the permanence and closure factor for the minors. And in the best interest hearing, the trial court in the ruling discussed that this factor weighed heavily and that minors need to move forward with closure. So while it is only one factor, it was a factor that was taken into great consideration by the trial court. And in terms of the cases that have held that the lack of an adoptive parent was not sufficient to hold that it was not in the minor's best interest to terminate rights, specifically the Toshika case was a 4th District case here, and the facts of that case were different than what were presented with here. There, the child had physical and learning disabilities, I believe, that prevented the mother from caring for the child moving forward. The child was in, was a ward of the state for, I believe, over 7 years. And the court there, I believe, was looking for permanency for the child moving forward when the child experienced legal limbo for so long. The DM case that Your Honor referenced also, that was a 1st District case. There, this was along the line of cases that I discussed briefly in our argument where the mother there had a drug history and the court had found that she had exposed her child to a high drug environment. The court there used language that made the reasoning for that decision as to free the child from further harmful contact from her biological parents. Here, as I mentioned earlier, there is no contact between the respondent and the child to free the children from. The minors, as I said, have not had contact outside one letter since they were taken in to be boards of the state on, I believe, July 31, 2012. Thank you, and I'd be happy to answer any questions. I don't see any counsel. Thanks to both of you, the case is submitted, and the court will stand in recess.